IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Criminal Action |
| ) | No. 08-03118-01-CR-S-DGK |
| KEVIN D. BURTCHETT, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Defendant has filed a Motion to Suppress Evidence, in which he asserts that evidence seized as a result of a search of his residence should be suppressed. The United States has filed its response. The matter was set for an evidentiary hearing, which was held before the undersigned on April 14, 2009. The defendant was present with counsel, Mark E. Maddux, and the United States was represented by Elizabeth A. Murray, Special Assistant United States Attorney.

In the motion to suppress evidence, defendant asserts that the affidavit in support of the search warrant is facially deficient in that it fails to show probable cause that there was a fair probability that contraband or evidence of a crime would be found at his residence. It is his position that the fact that the reliable source stated that defendant owns a business at 1253 East St. Louis Street in Springfield is not relevant; there is no indication when the officer learned of this information, which could be stale; similarly, there is nothing to indicate when Sergeant Funderburk heard the suggestion from the reliable source that defendant might be involved in the indoor

1

cultivation of marijuana, or when the source heard this information; and finally, the source did not indicate where defendant might be involved in indoor marijuana growing. He also contends that the fact that defendant's business partner's vehicle has been seen at the business is not relevant. Defendant contends that the officer's statement that he located marijuana stems and pieces in bags that also had documents for defendant's business partner bears no relevance regarding whether defendant might be engaged in illegal activity. Further, there is no indication when the marijuana stems and pieces were discovered. He asserts that the fact that his business vehicle was only seen at his residence one time during a one-month period is not relevant. Defendant also argues that Sergeant Funderburk's argument that his grass was not cut on a regular basis does not set forth why this is cause for issuance of a search warrant; and the officer does not explain exactly when the yard was neglected or by whom. By the same token, he contends that the officer does not explain how no lights on at night is relevant, and further, that this is not unusual. It is also his position that the evidence seized pursuant to the search warrant does not meet the good faith exception established in United States v. Leon, 468 U.S. 897 (1984).

In response to defendant's motion to suppress evidence, the government asserts that the affidavit included sufficient facts to establish probable cause. Additionally, it is contended that Sergeant Funderburk was aware of additional information that he accidentally failed to include in the affidavit. The government asserts that Sergeant Funderburk relied on the county prosecutor and a circuit court judge in seeking the search warrant, and that even if the affidavit lacked sufficient information to establish probable cause, the Leon exception should apply in this case.

The government first called Sergeant Matt Funderburk of the Missouri State Highway Patrol. Sergeant Funderburk is a supervisor for Zone 17 on I-44 for part of the year; from May through

2

October, he is the coordinator for the Troop D Marijuana Eradication Team. In May of 2008, he received information from a confidential informant that defendant and Darrell Parker had received hydroponic growing equipment at 1253 E. St. Louis Street in Springfield, Missouri. The information was that Parker had received one shipment, and defendant had received several shipments at this address. Hydroponic equipment is used to grow plants in water. Sergeant Funderburk testified that he had worked with the confidential informant for several years, and the informant had always been very reliable. He stated that all the information he had obtained from this source had been accurate, and had led to narcotics arrests.

As a result of the information in the instant case, the officer conducted an investigation of Parker and defendant. He first developed intelligence information regarding the business at 1253 E. St. Louis Street. The business appeared to be a valid computer business, and defendant appeared to be the president of the company. The officer conducted surveillance at the business, during which time he saw several vehicles parked there. He traced the license plates from two vehicles to defendant and Parker. There were several other vehicles there, which he believed belonged either to customers or employees. He reached the conclusion that the hydroponic growing equipment was not being used at the business. From his experience and training, a hydroponic growing operation would not be used at a legitimate, operating business. In his opinion, the business was too small to support the equipment and/or to contain the equipment. Further, he believed that a closet grow was not being conducted at the business because of the large amount of equipment that had been received. His investigation therefore expanded to defendant's residence at 4109 East Eastmoor in Springfield and to Parker's residence in Rogersville. Law enforcement officers were unable to conduct surveillance at Parker's house because it was located on several acres in the woods, and the

house could not be seen from the road  Additionally, as part of his investigation, he spoke to a Christian County Officer who had recently been to Parker's residence because of a domestic disturbance. The officer advised Sergeant Funderburk that there was no evidence of any narcotics activity in the Parker home. Therefore, Sergeant Funderburk began to investigate and conduct surveillance at defendant's residence. During the course of his investigation, he drove by the house over 30 times. Sergeant T.J. Stevens drove by at least twice, and another officer also drove by several times. When he went by at night, he never saw any lights on in the front or the back; the yard was unkempt; and on four different occasions, they could never find any trash for a trash pull, which he found very suspicious. He never observed any lights on during the day either. Regarding the trash, defendant's trash would be set out, but there was no trash in the trash can. It was obvious that other neighbors had visible trash in their trash cans. Some of them used the same trash company as defendant. The officer also attempted two "knock and talks" at defendant's house, but no one answered. On only one occasion, he saw defendant's vehicle at the residence. He did not believe defendant was living at the home because there were no lights on at night, the grass was uncut, and there was a lack of traffic at the house  He reiterated that compared to other houses in the neighborhood, defendant's yard was unkempt. Based on his experience with indoor grows, an unkempt yard is a strong indicator that the house is being used to grow marijuana. Because he did not locate any trash at the house, Sergeant Funderburk testified that he continued to check the trash at defendant's business. In July of 2008, he observed three trash bags in the dumpster behind the business. In one bag, the officers located  marijuana. They also observed some documents in another bag that had Darrell Parker's name on them. He did not rule out defendant as a suspect because the bag with the marijuana in it contain documents with any individual's name on them.

4

Sergeant Funderburk then sought a search warrant for defendant's house and Darrell Parker's house, with the help of a COMET Drug Task Force Officer, Dean Adams, who had the standard documents on his computer. On July 10, 2008, he took the search warrant documents–the affidavit, complaint, and application for the search warrant for defendant's residence – to the Greene County Prosecutor's officer, where they were reviewed by Assistant Prosecutor Kelly Martin. After the prosecutor signed the complaint, Sergeant Funderburk presented the search warrant documents, on the same day, to Circuit Court Judge Thomas Mountjoy. Sergeant Funderburk observed the judge read and sign the documents. After the search warrant was signed, he executed it on July 10, 2008, with the assistance of other officers. Defendant was home, as was his girlfriend, Valerie Gagnon.

On cross examination, Sergeant Funderburk testified that he believed that Parker was a partner with defendant at the St. Louis Street business. In the trash pull, he found marijuana stems and seeds. He admitted that he did not find defendant's name on any documents in the trash bag that contained the marijuana. In separate trash bags, he found the name of Darrell Parker and also his son's name. The address on the mail in those bags was in Rogersville. While he acknowledged that this would have directed his attention or investigation towards the Rogersville residence, it did not necessarily divert his attention away from defendant's residence. When he drove by defendant's house over 30 times, he would often stop up the street, and would just spend a short amount of time in front of defendant's house. He did go behind the house and look at the windows there, but he never went to the common area directly behind the house. He could, however, see the back of the house and never saw any lights on.

Defendant contends that the search warrant was issued without the requisite probable cause. The law is clear that a warrant is supported by probable cause if, "given all the circumstances set

5

forth in the affidavit . . ., including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability" that contraband or evidence of a crime will be found in the place to be searched. United States v. Edmiston, 46 F.3d 786, 789 (8th Cir. 1995), quoting Illinois v. Gates, 462 U.S. 213, 238 (1983). Affidavits should be read in a "common-sense and realistic fashion" and judges must make a practical decision based on the totality of the circumstances. United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995) (citation omitted). In determining for suppression purposes the validity of a warrant, the court must determine whether there was a "substantial basis" for the probable cause determination. Gates, 462 U.S. at 238. Probable cause may be based on hearsay from a reliable source, and anonymous information that can be independently corroborated may form a probable cause basis. Id. at 244-45. "When we review the sufficiency of an affidavit supporting a search warrant, great deference is accorded the issuing judicial officer." U.S. v. Fulgham, 143 F.3d 399, 400-01 (8th Cir. 1998) (citation omitted).

In the instant case, the affidavit contains the following statements from Sergeant Funderburk specifically relevant to the search of defendant's residence: that within the past nine weeks, he was contacted by a reliable source, who indicated that defendant and Darrell Parker might be involved in the indoor cultivation of marijuana. A "proven reliable source," according to the officer, is a source of information who has provided him with information over the past several years, which has led to "many drug arrests." [Affidavit, at 2]. The source gave the names of defendant and Parker, and gave the address of the business on East St. Louis Street in Springfield. The officer indicated in the affidavit that he investigated, and learned that the business was owned by defendant. He conducted surveillance at the business for the last month, and while doing so, observed that Parker's vehicle was at the business late at night, well after it had closed. He also stated that within the last

6

24 hours, he had observed the trash dumpster behind the business, and saw three tied trash bags placed in the dumpster. After confiscating the trash and searching the bags, one of the three bags contained marijuana stems and a small amount of marijuana. Documents with Parker's name were found in the bags, according to the affiant. He indicated that he had conducted surveillance at defendant's home address during the last month. During that time, he had only seen defendant's company vehicle at the residence one time; the yard was not kept up; officers had observed no lights on at night, as if no one was home or the windows were covered from the inside; and the utilities, which are in defendant's name, showed higher usage this year when compared to the same time last year. He indicated that "[a]ll of the above listed items concerning the residence and business are indicators to me based on my training and experience as a law enforcement officer that the residence and business may be being used for marijuana growing operations." [Affidavit, at 2]. Sergeant Funderburk also indicated that defendant Parker has had two arrests since 2006 for controlled substances.

After fully reviewing the evidence, the Court finds that although not overwhelming, there is sufficient information in the affidavit to support a probable cause finding. In this case, the Court believes that based on the information set forth in the affidavit, the issuing judge could conclude that there was a substantial basis to support the search warrant. It is true that some of the evidence does not seem particularly suggestive of criminal activity when viewed in isolation, such as an unkempt yard, no lights on at night, no vehicles around the residence, or a utility bill that was higher than the previous year. When considered in total, however, and when read in a common sense fashion, which the law requires the Court to do, this information, together with the information from the reliable confidential source, leads to the conclusion that the affidavit contained sufficient and corroborated

7

information to establish probable cause for issuance of the search warrant for defendant's residence. Despite defendant's assertion that the information was stale because the tip from the confidential informant was approximately 9 weeks old, the evidence of marijuana at the business was found within the 24 hours prior to seeking the search warrant. Additionally, the surveillance of defendant's residence occurred within the past month, and included at least thirty times that Sergeant Funderburk and other officers drove by. Their surveillance spanned four weeks of trash pickups, and covered ample time for the grass to have been mowed, particularly given the summer month, if someone were taking care of the home as a residence. Further, as submitted by the government, an indoor marijuana growing operation does not have the transitory nature of other drug distribution schemes, and the information from the confidential source was corroborated by the investigation, thereby minimizing the risk that stale information can create. Therefore, based on a common sense reading of the affidavit, under the totality of the circumstances standard, including the officer's statement regarding the reliability of the source, the Court finds that there was a fair probability that evidence of a crime would be found at defendant's residence.

Even assuming, however, that the warrant in this case was not based on probable cause and found to be defective, the Court finds that the good faith exception enunciated in <u>United States v. Leon</u>, 468 U.S. 897, 922-23 (1984), would apply. It is clear that Sergeant Funderburk relied in good faith on what he believed to be a valid search warrant, which was reviewed and signed by a neutral magistrate. There is nothing to suggest that the affidavit was so lacking in indicia of probable cause that the <u>Leon</u> good faith exception should not apply. When making a good faith assessment, the Court must examine the totality of the circumstances, including what the officer knew but did not include in his affidavit. <u>United States v. Chambers,</u> 987 F.2d 1331, 1335 (8th Cir.
8

1993).

Having reviewed the record as a whole, with the benefit of the officer's testimony at the hearing, the Court concludes that it was objectively reasonable for Sergeant Funderburk to have believed that probable cause existed in this case. Specifically, at the hearing the officer testified that the reliable source provided information that defendant and Parker had received shipments of hydroponic growing equipment, including information that Parker had received one shipment and defendant had received several at the East St. Louis Street address. Sergeant Funderburk confirmed that this business was defendant's, that Parker was a partner there, that it appeared to be a legitimate business, and that based on his experience, the business was not capable of maintaining a hydroponic growing operation. He also had included in his affidavit the fact that Parker had had two arrests for controlled substance violations since 2006. He then found the marijuana stems and seeds in trash at the business the night before he applied for the search warrant. Based on his investigation and surveillance, which corroborated the tip from the reliable source, the information he had obtained over the past month directed his attention to defendant's residence for evidence of an indoor marijuana growing operation. When considering the information that the officer knew and inadvertently did not include in the affidavit, which directly tied defendant to the possession of hydroponic growing equipment, and further considering his reliance on the probable cause determination by what was clearly a neutral and detached judge, the Court finds the good faith exception should apply. Based on the totality of the circumstances, it was objectively reasonable for the officer to have believed that probable cause existed in this case to search defendant's residence. Accordingly, it will be recommended

9

that the motion to suppress should be denied.

Based on a full review of the record, it must be recommended that defendant's motion to suppress be denied.

For the foregoing reasons, it will be

RECOMMENDED that defendant's Motion to Suppress Evidence be denied.

/s/ James C. England  
JAMES C. ENGLAND, CHIEF  
UNITED STATES MAGISTRATE JUDGE

DATE: 5/5/09